UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2019 JUL -8 PM 4:50

SOUTHERN DISTRICT
OF INDIANA

Kurt J Kemp, )
    Plaintiff, )
     )
v. )
     )
     )
The GEO Group, Warden K. Butts, Warden M. )
Seiver, I.D.O.C. Executive Director M. Osburn, )
Program Director Andrew Beghun, )
F. Owens (Classification), A. Elsrod )
(Classification), I.D.O.C. Grievance )
Manager I. Randolf, Executive Assistant )
H. Winningham, I.D.O.C. Executive Director )
of P.R.E.A. Bryan Pearson, *in both their Official* )
*and Personal capacities.* )
    Defendants. )

1:19-cv-2788 JPH-DLP

Cause No._____

## JURY TRIAL DEMANDED

## COMPLAINT CIVIL ACTION 42 U.S.C. SECTION 1983

### JURISDICTION & VENUE

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation under Color of State Law, of Rights secured by the Constitution of the United States. This Court has the jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202.

2. The Southern District of Indiana, Indianapolis Division is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred.

## PLAINTIFF

3. Plaintiff Kurt J Kemp is a prisoner of the State of Indiana in Custody of the New Castle Department of Corrections. He is currently confined in the New Castle Correctional Facility in New Castle, Indiana. 47362. Herein giving rise to the events for this claim while he was in the custody of the Warden of New Castle Correctional Facility, New Castle, IN 47362.

## DEFENDANT'S

4. The GEO Group, was at all times hereto the Corporation acting under color of state law that operates the facility at New Castle Correctional Facility 1000 Van Nuys Road, New Castle, Indiana 47362 under a contract with the State Of Indiana. The GEO Group provides services to the prisoners there for the Indiana Department of Corrections. The GEO Group Corporate Offices are at : 4955 Technology Way, Boca Raton, Florida 33431.

5. Keith Butts, was at all times hereto the Warden at New Castle Correctional Facility, 1000 Van Nuys Road, New Castle, IN 47362.

6. M. Seiver, was at all times hereto the Warden at New Castle Correctional Facility, 1000 Van Nuys Road, New Castle, IN 47362.

7. Andrew Beghun was at all times hereto the P.L.U.S. Program Director at New Castle Correctional Facility, 1000 Van Nuys Road, New Castle, IN 47362.

8. M. Osburn was at all times hereto the Executive Director Of I.D.O.C. for Indiana Department of Corrections (I.D.O.C.) 302 West Washington Street E344, Indianapolis, IN 46204.

9. I. Randolf was at all times hereto the IDOC Central Office Department Offender Grievance Manager for Indiana Department of Corrections (I.D.O.C.) 302 West Washington Street E344, Indianapolis, IN 46204.

10. H. Winningham was at all times hereto the Executive Assistant at at New Castle Correctional Facility, 1000 Van Nuys Road, New Castle, IN 47362.

11. F. Owens was at all times hereto the Supervisor of Classification at New Castle Correctional Facility, 1000 Van Nuys Road, New Castle, IN 47362.

12. A. Elsrod was at all times hereto worked in Classifications at New Castle Correctional Facility, 1000 Van Nuys Road, New Castle, IN 47362.

13. Bryan Pearson was at all times hereto the Executive Director for P.R.E.A. for Indiana Department of Corrections (I.D.O.C.) 302 West Washington Street E344, Indianapolis, IN 46204

14. Each Defendant is sued individually and his or her's official capacity. At all times mentioned in this complaint each Defendant acted under the color of State Law and United States Law.

## FACTS ABOUT THE INJURY

15. The Plaintiff was engaged in protected conduct when he wrote to the I.D.O.C. Executive Director of P.R.E.A. Mr. Bryan Pearson about what the Plaintiff believed were possible violations of P.R.E.A. and H.I.P.P.A. law in regard to the suicide companion watch program that all P.L.U.S. participants are required to take part in as part of the P.L.U.S. Program.
16. At some point the letter the Plaintiff had written to Mr. Pearson was forwarded on to the IDOC Executive Director Mr. M. Osburn.
17. Mr. Osburn wrote a letter to the Plaintiff on 5/31/19 telling him that he should have used the P.L.U.S. "chain of command" to address his concerns about the suicide watch companion program in P.L.U.S..
18. Mr. Osburn returned the Plaintiff's original letter to the I.D.O.C. Executive Director of P.R.E.A. Mr. Bryan Pearson with his response letter on 5/31/19.
19. I.D.O.C. Executive Director Osburn contacted NCCF and inquired to staff there about the letter the Plaintiff had written the I.D.O.C. Executive Director of P.R.E.A. Mr. Bryan Pearson. The I.D.O.C. Executive Director's letter to the Plaintiff clearly states that he did.
20. On the morning of 5/20/19 The Plaintiff, Mr. Kemp was told by Mr. John Hudson that he would be removed from the P.L.U.S. Program, and that he would be removed from the program dorm later on in the day for not following the P.L.U.S. chain of command when he wrote his letter to the Executive Director of P.R.E.A..
21. On 5/20/19 Mr. Kemp was moved out of the P.L.U.S. Program Dorm with no written explanation of his removal from the P.L.U.S. Program. Only a bed move, and the explanation from John Hudson that was given to the Plaintiff.
22. On 5/20/19 the Plaintiff began the formal grievance process about the retaliation he was subjected to for practicing his 1st Amendment right to redress his grievances with the government.

23. The Plaintiff, Mr. Kemp, should not have been retaliated against simply for making his concerns known to Mr. Bryan Pearson the Executive Director of P.R.E.A. and also to the Executive Director for I.D.O.C.. It is the Plaintiff's belief that his letter was confidential, and his First Amendment rights were violated by the P.R.E.A. Executive Director when he informed the I.D.O.C. Executive Director Michael Osburn about the Plaintiffs letter to P.R.E.A..

24. The Plaintiff's protected speech was a "*motivating factor*" for the retaliation. In fact, the Plaintiff's expulsion from P.L.U.S. was retaliation as a direct result of his letter to the P.R.E.A. Executive Director Mr. Bryan Pearson, and *did not reasonably advance a legitimate correctional goal.*

25. The Plaintiff was not involved at any time in, or at any time alleged to be involved with any matters that were in violation of any lawful rule, procedure or policy of the Facility, I.D.O.C., or The GEO Group. The Plaintiff did not receive any formal or informal "write ups" or "Infractions" while a participant in the P.L.U.S. Program.

26. Rule 17 of the P.L.U.S. Program rules shows that the P.L.U.S. Program rules themselves are unconstitutional when they state that " **All interaction with staff will be conducted through Aides and Clerks, when issues arise and staff is involved, the program leadership will be the only ones to deal with them. At No time are participants to run up to the door or staff to have issues addressed. Take all issues to your leadership, and they will address them with staff.**" This proves the Administration at N.C.C.F. and The GEO Group have abdicated their responsibility over P.L.U.S. Participants, and put the fate of inmates into the hands of other inmates.

27. Rule 15 of P.L.U.S. Program Rules at N.C.C.F. clearly talk about there being a "chain of command" in regard to issues dealing with peer to peer issues. It is a mediation process that is meant to resolve issues between two or more P.L.U.S. participants. It's a four stage process that always involves participants with Peer Mentors, Aides, Clerks, AG Group leaders. There is no lawful rule stating that the Plaintiff must go through the P.L.U.S. chain of command to address his P.R.E.A. or other concerns regarding the facility.

28. According to **Mayoral v. Sheahan**, 245 F.3d 934 (7th Cir. 2000), the court held that evidence that a tier officer told an inmate in a rowdy cell block to "Control 'his guys' ", thus seeming to have deliberately abdicated his responsibility and put the fate of the inmates in the hands of another inmate," Could support a claim of deliberate indifference, 254 F.3d 940. Several other courts have held that staff tolerance of inmates "running" housing areas may support a deliberate indifference claim. See **Bass v. Jackson**, 790 F2,d 260,263 (2d Cir. 1986); **Stokes v. Delcambre**, 710 F.2d 260,263 (2d Cir. 1986); **Gilland v. Owens**, 718 F. Supp. at 688; **McDuffie v. Estelle**, 935 F.2d 682,686 n. 6 (5th Cir. 1991) In P.L.U.S. the P.L.U.S. Aides and Clerks "run" the dorms.

29. Rules 15 & 17 of the P.L.U.S. Rules and the so called "chain of command" places inmates in a position of supervisory or disciplinary authority over other inmates in the P.L.U.S. Program which is unconstitutional because by doing so, prison authorities are being deliberately indifferent to the fate of the P.L.U.S. Program participants when they allow inmates to have supervisory or disciplinary powers over other inmates.

30. All of these facts go to prove that the Plaintiff had no way to have his P.R.E.A. concerns dealt with and addressed in a confidential manner through the "chain of command" because the policy would require the Plaintiff to tell other inmates first about the concerns he raised in his letter before being allowed to convey them to prison staff or to the P.R.E.A. Executive Director Bryan Pearson. The P.L.U.S. chain of command is designed for peer to peer resolution of issues between two P.L.U.S. participants and is not for resolving P.R.E.A. issues.

31. As a result of his unconstitutional expulsion from the P.L.U.S. Program the Plaintiff has had negative consequences. The Plaintiff may no longer get a job as a P.L.U.S. Aide, or receive a "Sentence Modification" or "Time Cut" for completing the program. Plaintiff has lost pay that he would have received while in the program. Plaintiff may not be eligible for jobs he may have if he had been allowed to graduate the P.L.U.S. Program. Plaintiff no longer is eligible to live in the P.L.U.S. Graduate dorm.

32. The P.L.U.S. Program Director, Mr. Andrew Beghun gave the "chain of command" as the reason he expelled the Plaintiff from P.L.U.S. in his Level I Response to the grievance filed by the Plaintiff on 5/24/19. A. Beghun said " You chose to skip the chain of command. This has resulted in your termination from the program."

33. Plaintiff's letter to PREA Executive Director Bryan Pearson was also shared with the I.D.O.C. Executive Director Michael Osburn. Ultimately, even writing P.R.E.A. directly still resulted in the Plaintiff's name being revealed to the P.L.U.S. Program Director, and this directly resulted in his being retaliated against, and terminated from the P.L.U.S. Program.

34. The United States Department of Justice had received a letter from the Plaintiff which Steven H. Rosenbaum a Special Litigation Section Chief for The United States Department of Justice (U.S.D.O.J.) responded, and told the Plaintiff in his response that the Plaintiff should contact the P.R.E.A. Executive Director for I.D.O.C., and that according to their letter "The P.R.E.A. Standards also forbid retaliation against a prisoner or staff member who reports sexual abuse or sexual harassment."

35. Plaintiff is being retaliated against for simply reporting prison conditions that the United States Department Of Justice Special Litigation Section Chief Steven H. Rosenbaum had told the Plaintiff he could report to the P.R.E.A. Executive Director for I.D.O.C. without fear of retaliation.

36. The Plaintiff was only two weeks from graduation from the P.L.U.S. program. He had been a #2, and then a #1 leading in the P.L.U.S. Program Accountability Groups. The Plaintiff was also accepted into the On The Job Training (O.J.T.) program for P.L.U.S. to be trained as a possible future P.L.U.S. Program Aide.

37. Plaintiff had no conduct, no infractions and was doing well in the P.L.U.S. program. Plaintiff is not accused of any conduct or infractions. The same day Plaintiff was expelled from P.L.U.S. he was ready to submit his P.L.U.S. Program Portfolio for consideration which is part of the graduation process in P.L.U.S. .

38. Prisoners may not be denied work assignments, removed from them, or given particularly undesirable ones, in retaliation for constitutionally protected activities. **DeWalt v. Carter**, 224 F.3d 607, 618-19 (7th Cir. 2000).

39. **Rizzo v. Dawson,** 778 F.2d 527, 531-32 (9th Cir. 1985)(Exclusion from programs), and also **Haris v. Flemming,** 839 F.2d 1232, 1236-37 (7th Cir. 1988) (discrimination in job and cell assignments) are a couple of cases that the courts have found sufficiently adverse to support a retaliation claim when an inmate is terminated from or denied a job or program in retaliation for practicing their First Amendment right to Free Speech. **Hoskins v. Lenear**, 395 F.3d 372,375 (7th Cir. 2005) (per curiam) (Prisoners are entitled to utilize available grievance procedures without threat of recrimination....") Because the Plaintiff knew he would be retaliated against by Mr. Beghun after seeing what has happened to other inmates who spoke up or complained to much about the P.L.U.S. Program, the Plaintiff decided to contact P.R.E.A. directly, and to tell the P.R.E.A. Executive Director of his concerns. The Plaintiff had every right to expect his letter to the P.R.E.A. Executive Director to remain confidential.

40. The Plaintiff's letter to the P.R.E.A. Executive Director Mr. Bryan Pearson was confidential. Instead, the letter was shared with The I.D.O.C. Executive Director, and then ultimately with P.L.U.S. Program Director Mr. Andrew Beghun who then chose to kick Plaintiff out for contacting Mr. Pearson at P.R.E.A. about his concerns.

41. Defendant K. Butts caused the Plaintiff to be subjected to a deprivation of his 1st Amendment right to free speech and to redress his grievances with the government without being retaliated against. After being informed of the violation of the Plaintiff's rights through documents filed through the NCCF grievance process, Mr. K. Butts failed to remedy the wrong, and Mr. K. Butts allowed the continuance of the unconstitutional practice of retaliation against the Plaintiff for practicing his 1st Amendment right to free speech and to redress his grievances with the government. Defendant K. Butts exhibited deliberate indifference to the rights of the Plaintiff by failing to act on the information indicating that unconstitutional acts were occurring when he was made aware by the Plaintiff's grievance #107472 dated 5/20/19, and in the appeals that followed.

42. Defendant M. Seiver caused the Plaintiff to be subjected to a deprivation of his 1st Amendment right to free speech and to redress his grievances with the government without being retaliated against. After being informed of the violation of the Plaintiff's rights through documents filed through the NCCF grievance process, M. Seiver failed to remedy the wrong, and M. Seiver allowed the continuance of the unconstitutional practice of retaliation against the Plaintiff for practicing his 1st Amendment right to free speech and to redress his grievances with the government. Defendant M. Seiver exhibited deliberate indifference to the rights of the Plaintiff by failing to act on the information indicating that unconstitutional acts were occurring when he was made aware by the Plaintiff's grievance #107472 dated 5/20/19, and in the appeals that followed.

43. Defendant The GEO Group caused the Plaintiff to be subjected to a deprivation of his 1st Amendment right to free speech and to redress his grievances with the government without being retaliated against. After being informed of the violation of the Plaintiff's rights through documents filed through the NCCF grievance process, The GEO Group failed to remedy the wrong, and The GEO Group allowed the continuance of the unconstitutional practice of retaliation against the Plaintiff for practicing his 1st Amendment right to free speech and to redress his grievances with the government. Defendant The GEO Group exhibited deliberate indifference to the rights of the Plaintiff by failing to act on the information indicating that unconstitutional acts were occurring when The GEO Group was made aware by the Plaintiff's grievance #107472 dated 5/20/19, and in the appeals that followed.

44. Defendant M. Osburn caused the Plaintiff to be subjected to a deprivation of his 1st Amendment right to free speech and to redress his grievances with the government without being retaliated against. After being informed of the violation of the Plaintiff's rights through documents filed through the grievance process, M. Osburn failed to remedy the wrong, and M. Osburn allowed the continuance of the unconstitutional practice of retaliation against the Plaintiff for practicing his 1st Amendment right to free speech and to redress his grievances with the government. Defendant M. Osburn exhibited deliberate indifference to the rights of the Plaintiff by failing to act on the information indicating that unconstitutional acts were occurring when he was made aware by the Plaintiff's grievance, and in the appeals that followed.

45. Defendant F. Owens (Classification), caused the Plaintiff to be subjected to a deprivation of his 1st Amendment right to free speech and to redress his grievances with the government without being retaliated against. After being informed of the violation of the Plaintiff's rights through documents filed through the grievance process, F. Owens failed to remedy the wrong, and F. Owens allowed the continuance of the unconstitutional practice of retaliation against the Plaintiff for practicing his 1st Amendment right to free speech and to redress his grievances with the government. Defendant F. Owens exhibited deliberate indifference to the rights of the Plaintiff by failing to act on the information indicating that unconstitutional acts were occurring when he was made aware by the Plaintiff's grievance #107472 dated 5/20/19, and in the appeals that followed.

46. Defendant A. Elsrod (Classification), caused the Plaintiff to be subjected to a deprivation of his 1st Amendment right to free speech and to redress his grievances with the government without being retaliated against. After being informed of the violation of the Plaintiff's rights through documents filed through the grievance process, A. Elsrod failed to remedy the wrong, and A. Elsrod allowed the continuance of the unconstitutional practice of retaliation against the Plaintiff for practicing his 1st Amendment right to free speech and to redress his grievances with the government. Defendant A. Elsrod exhibited deliberate indifference to the rights of the Plaintiff by failing to act on the information indicating that unconstitutional acts were occurring when he was made aware by the Plaintiff's grievance #107472 dated 5/20/19, and in the appeals that followed.

47. Defendant Executive Assistant H. Winningham, caused the Plaintiff to be subjected to a deprivation of his 1st Amendment right to free speech and to redress his grievances with the government without being retaliated against. After being informed of the violation of the Plaintiff's rights through documents filed through the grievance process, H. Winningham failed to remedy the wrong, and H. Winningham allowed the continuance of the unconstitutional practice of retaliation against the Plaintiff for practicing his 1st Amendment right to free speech and to redress his grievances with the government. Defendant H. Winningham exhibited deliberate indifference to the rights of the Plaintiff by failing to act on the information indicating that unconstitutional acts were occurring when he was made aware by the Plaintiff's grievance #107472 dated 5/20/19, and in the appeals that followed.

48. Defendant I. Randolf (I.D.O.C. Grievance Manager), caused the Plaintiff to be subjected to a deprivation of his 1st Amendment right to free speech and to redress his grievances with the government without being retaliated against. After being informed of the violation of the Plaintiff's rights through documents filed through the grievance process, I. Randolf failed to remedy the wrong, and I. Randolf allowed the continuance of the unconstitutional practice of retaliation against the Plaintiff for practicing his 1st Amendment right to free speech and to redress his grievances with the government. Defendant I. Randolf exhibited deliberate indifference to the rights of the Plaintiff by failing to act on the information indicating that unconstitutional acts were occurring when he was made aware by the Plaintiff's grievance #107472 dated 5/20/19, and in the appeals that followed.

49. On 6/17/19 Mr. I. Randolf who is the final reviewing authority for the I.D.O.C. Offender Grievance Process under the I.D.O.C. grievance policy #00-02-301 took advantage of a rule under that policy which states "The Department Offender Greivance Manager (Mr. I. Randolf) may extend the time frame once, for ten (10) business days."

50. Plaintiff's Level 3 Appeal was extend under policy#00-02-310, and the Plaintiff was informed that he should receive his response by 7/1/19. Then, on 7/2/19 Mr. I. Randolf sent another notice informing the Plaintiff of his intent to extend the time frame for a response yet again until 7/17/19. Again, I.D.O.C.'s own grievance policy states that the I.D.O.C. Offender Grievance Manager can only extend the time frame once for ten (10) business days. This is all for the same grievance case # 107472. The Plaintiff has exhausted his administrative remedies. **Brengettey v. Horton**, 423 F.3d 674,682 (7th Cir. 2005)(holding prisoner who received no decision had exhausted where the grievance policy did not say what to do absent a decision.) and **Lewis v. Washington**, 300 F.3d 829, 833 (7th Cir. 2003) (non-response made remedy unavailable).

51. In the support of this complaint I have attached the following :

## EXHAUSTION OF REMEDIES

52. Plaintiff ,Kurt J Kemp, re-alleges and incorporates by reference paragraphs 1-51

53. The defendants constituted a cruel and unusual punishment and suffering violations under the United States Constitution acting under the color of Law.

54. Kurt J. Kemp, plaintiff, has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants the declaratory and injunctive relief which plaintiff seeks.

## 55. PRAYER FOR RELIEF

56. **WHEREFORE,** Plaintiff Kurt J. Kemp, respectfully prays that this Court enter judgment granting plaintiff;

57. A declaration that the acts and omissions described herein and Plaintiff's declaration violated Plaintiff's right's under the Constitution and laws of the United States;

58. An injunction restoring the Plaintiff to the P.L.U.S. program to continue where he left off in the program and allowing him to complete the P.L.U.S. Program.

59. Compensatory damages against each defendant, jointly and severely;

60. Punitive damages against each defendant, for each event involved;

61. A jury trial on all issues triable by jury;

62. Plaintiff's cost in this suit;

63. Any additional relief this court deems just, proper, and equitable.

DATED

July 3, 2019

Respectfully Submitted,

Kurt J. Kemp, Plaintiff, pro se,
13-126
New Castle Correctional Facility
P.O. BOX A
New Castle Indiana, 47362


## **VERIFICATION**

I have read the foregoing "**Complaint**" and hereby verify that the matters alleged therein are true to the best of my recollection, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed At the New Castle Correctional Facility, New Castle, Indiana on July 3, 2019

_____
**Kurt J Kemp, Plaintiff, pro se**

D.O.C. # **266745**
I3-126
New Castle Correctional Facility
P.O. Box A
New Castle, IN 47362-1041

## CERTIFICATE OF AUTHENTICITY

I hereby declare under the penalty of perjury that the foregoing attached documents herewith are true and identical copies of authentic documents.

I hereby submit and enter these documents in support of the motion aforementioned herewith.

DATE July 3, 2019

Respectfully submitted,

_____
Affiant

**Kurt J Kemp**

D.O.C. # **266745**
I3-126
New Castle Correctional Facility
P.O. Box A
New Castle, IN 47362-1041