

**U.S. Department of Justice**

Civil Rights Division

168-26S-0/659413

*Special Litigation Section – PHB*
*950 Pennsylvania Avenue, N.W.*
*Washington, D.C. 20530*

May 10, 2019

**<u>Via First Class Mail</u>**
Kirk Kemp
Inmate ID 266745
Housing Unit G4-222
The GEO Group Inc.
New Castle Correctional Facility
Post Office Box A
New Castle, IN 47362

Dear Mr. Kemp:

Thank you for your letter. Your letter raised concerns that may fall under the Prison Rape Elimination Act (PREA), a law that addresses sexual abuse and sexual harassment against prisoners and detainees. The Department of Justice has developed National PREA Standards, which are rules that apply to all prisons and jails, community detention facilities and juvenile facilities. The standards are meant to effectively prevent, detect, and respond to custodial sexual abuse and sexual harassment. The PREA Standards also forbid retaliation against a prisoner or staff member who reports sexual abuse or sexual harassment. You can learn more about PREA at the PREA Information Center's website: www.prearesourcecenter.org/training-technical-assistance/prea-101/prisons-and-jail-standards. The standards require agencies to name a PREA Coordinator to oversee agency PREA compliance efforts, including investigating individual prisoner complaints of sexual abuse and sexual harassment. You may wish to contact the Statewide PREA Coordinator listed on the attached directory.

The Special Litigation Section of the Civil Rights Division does not have authority to directly enforce the PREA standards. However, we rely on information from community members to identify civil rights violations. Each week, we receive many reports of potential violations. We collect and analyze this information to help us select cases, and we may also use this information as evidence in an existing case. Our cases involve protecting people's civil rights that are threatened by widespread patterns of conduct, including conduct that affects people in institutions like jails and prisons. We do not assist with individual problems or complaints, or criminal matters. We will review your letter to decide whether it is necessary to contact you for additional information. We do not have the resources to follow-up on every letter.

Plaintiffs Exhibit A1

If your concern is not within this Section's area of work, you may wish to consult the Civil Rights Division web page to find the correct section: www.justice.gov/crt.

For more information about the Special Litigation Section or the work we do, please visit our web page: www.justice.gov/crt/about/spl/.

Sincerely,


/s/
Steven H. Rosenbaum
Section Chief
Special Litigation Section



**STATE OF INDIANA**
**Department of Correction**
Indiana Government Center—South

Eric J. Holcomb
Governor

302 W. Washington Street • Indianapolis, Indiana 46204-2738
Phone: (317) 232-5711 • Fax: (317) 232-6798 • Website: www.in.gov/idoc/

Robert E. Carter Jr.
Commissioner

May 31, 2019

Kurt Kemp 266745
New Castle Correctional Facility
P.O. Box A
New Castle, IN 47362

Dear Mr. Kemp:

Your letter regarding PLUS program requirements at the New Castle Correctional Facility has been received and reviewed. I can appreciate the frustration you evidently experienced.

Please be advised that PLUS is a voluntary program involving a Participant Agreement, including consent to participate in all requirements of that program (Special Detail Suicide Companion among them), that is signed by participants in advance. You were aware of the requirement before getting involved.

I am certain that Suicide Companions and the staff that work with mentally fragile offenders witness many things that are uncomfortable and are things we would not want anyone to witness (or experience as the ill person, for that matter), but unfortunately, some of our more vulnerable individuals require a lot of extra support to stay safe. And, while details regarding the use of force is confidential, be assured that every use of force, including "spraying", is reviewed by facility officials, up to and including the Warden, and are available to the Department.

If you had concerns regarding the events you cite in your letter, the importance of following a chain-of-command to have concerns addressed is another requirement of the NCCF PLUS Participant Agreement. I confirmed with facility staff that you did nothing to have any of your concerns addressed internally, either at the time of occurrence or afterwards at available de-briefings.

I recommend you address further concerns with the facility staff first. Further communication regarding this issue, absent additional or new information, will be noted and filed.

Sincerely,

Michael Osburn
Executive Director

MO:sl

cc:   Keith Butts, Warden, New Castle Correctional Facility
       Offender Packet, Kurt Kemp, DOC #266745
       Tracking #94725
       file

PLAINTIFF'S EXHIBIT 1

94725
due 5-27

Bryan Pearson, Executive Director of PREA
Indiana Department of Correction
302 W. Washington St. E334
Indianapolis, IN 46204

Kurt Kemp
64-222  PO Box A
NCCF
New Castle, IN 47362
5/15/19

Dear Mr. Pearson,

   I am a participant in the P.L.U.S. Program at N.C.C.F. in New Castle, IN. As part of P.L.U.S. I, and all other participants in this program **must** do the "Suicide Companion Watch Program" in order to complete the program successfully. I have been in the program since June of 2018 and have reason to believe this watch program violates the rights of both P.L.U.S. participants as myself, and the rights of the person on "Suicide Watch" under the PREA Prison Rape Elimination Act. I and all other participants in P.L.U.S are forced to look into a cell with an often fully nude male inmate. These individuals are on suicide watch, and thus we know they have a mental illness, they do not leave their suicide blankets on, and we must watch them for safety reasons and document every 15 minutes their behaviors. I believe this also likely violates H.I.P.P.A., and I have written the U.S. Dept. of Justice Civil Rights Division about this, who wrote me back encouraging me to contact my states Statewide PREA Coordinator about all of this. They tell me they are reviewing my letter to them to decide whether it's necessary to contact me for additional information.

Over ⟶

Often we have to witness things on these watches nobody should have to witness - especially untrained, everyday prisoners. We have access to Medical information on the Suicide Watch Report as well as Names, IDOC Numbers. We also have to be exposed to some of these mentally ill inmates masturbatory, or harming themselves, and we also many times have seen people in these cells on suicide watch be tormented by staff, refused food and medicine. Gaurds brag about "spraying" offenders and often try to agravate them or "spray" them just because they are "going off" on their cells. I've told the DOJ Civil Rights Division about these things - I've tried to make you aware of the PREA violations I believe are going on - I hope you can investigate and talk to participants of the PLUS program. I'm sure there are those who will support what I am saying. This isn't so much about me or us PLUS participants - to me that's less important than the impact of Geo's treatment of and (Wexfords as well) of Inmates in Mental Health - especially the "Suicide Watchers". I enjoy doing something to help these people by doing these watches, but at the same time myself, and others also feel we are violating and having our rights violated because we feel forced into participating in what we feel amounts to a crime that because we don't want to lose our PLUS program we are expected to remain silent. Well, I for one am going to remain silent no longer - not when I've seen and heard the things I have.

page 1 of 2                    Plaintiffs Exhibit D



**OFFENDER GRIEVANCE**
State Form 45471 (R4 / 4-17)
DEPARTMENT OF CORRECTION

| FOR OFFICIAL USE ONLY |
|---|
| Grievance number |
| 107472 |

| To: **Facility Grievance Specialist** | Facility NCF | Date (month, day, year) 5/20/19 |
|---|---|---|

| From (name of offender) Kurt J. Kemp | DOC number 266745 | Signature of offender KTK |
|---|---|---|

| Housing assignment ~~G4-222~~ now I3-223 | Date of incident (month, day, year) 5/20/19 |
|---|---|

Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance.
*(NOTE: A Single ONE-sided sheet of paper may be attached if necessary to explain your grievance.)*

I am being kicked out and having my PLUS program terminated according to what I have been told by Case manager John Hudson. He stated to me this morning it is because I wrote downstate to the PREA Coordinator about my concerns about PREA, and the mental health suicide watch program. My letter to PREA Coordinator is priviledged, and Confidential and should not have been discussed with Andrew Begum the PLUS director. My name should never have been told to Mr. Begum, or anyone at this facility. Reports to PREA are Confidential. This is retaliation on the part of the director of the PLUS program because he is kicking me out because he believes I should have told him of my PREA Concerns before telling the state PREA coordinator. These are not the only issues I've raised. I've also questioned the legality of PLUS and whether it violates HIPPA rights of mental health suicide watch inmates who PLUS inmates watch in violation of the Constitution of the US. I know the case law that backs this up. I also was told that this issue is "not grievable" today by my Case manager John Hudson.

State the relief that you are seeking.

My program to be reinstated and I should be allowed to complete and graduate and enjoy the same benifits of any other PLUS graduate. I've done nothing wrong- Other than to speak out about the facility and PLUS, and how they violate constitutional rights of the PLUS Participants and suicide watch inmates on mental health ranges at N.C.F.. I was just about to graduate. This is not about breaking rules or behavior or Conduct - this is about trying to shut me up. It is totally illegal!

| Signature of Facility Grievance Specialist | Date (month, day, year) |
|---|---|

See, the First Amendment forbids prison officials from retaliating against prisoners for executing the right of free speech." Hoskins v. Lenear, 395 F.3d 372, 375 (7th Cir. 2005)(per curiam)( Prisoners are entitled to utilize available grievance proceedures without threat of recrimination. ...")   Plaintiffs Exhibit E         page 2 of 2

In Harris v. Fleming, 839 F.2d 1232, 1236-37 (7th Cir. 1988)(discrimination in job and cell assignmets) Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985)(exclusion from programs) are a couple cases that courts have found sufficiently adverse to support a retaliation claim when an inmate is terminated from or denied a job or program in retaliation for practicing their 1st Amendment right to free speech. "The First Amendment forbids prison officials from retaliating against prisoners for excercising the right to free speech." Hoskins v. Lenear, 395 F.3d 372, 375 (7th Cir. 2005)(per curiam)(Prisoners are entitled to utilize available grievance procedures without threat of recrimination. ...") Because I knew I would be retalited against after seing what happens to PLUS participants who complain to much, I decided to contact PREA directly, and tell them of my concerns. I had every right to expect this letter to PREA to be held as confidential, and my name not given to the facility or Mr. Beguhn. It was priveledged communications to the PREA Executive director Mr. Bryan Pearson. Now, the PLUS program director has taken adverse action against me - violating my constitutional free speech rights as well as protections under PREA law. My grievance is directed toward Mr. Andrew Beguhn, the PREA Executive Director Bryan Pearson, and Mr. John Hudson my PLUS case manager. I had previously been in contact with the U.S. Department of Justice about my PREA concerns, and they are the ones who advised me to contact Mr. Bryan Pearson, and who told me under PREA " The PREA Standards also forbid retaliation against a prisoner or staff member who reports sexual abuse or sexual harrasment. " This is according to a letter from D.O.J. from Steven H. Rosenbaum Section Chief Special Litigation

I Stated PLUS on June 13, 2018. My year in PLUS was almost complete. **Exhibit F**

I had been ready to submit my PLUS portfolio for review on 5/20/19 (the day this occured), and was well on my way to graduation. My program would have been completed in a few weeks.

Mr John Hudson told me I was being kicked out for not following the "chain of command" regarding the PREA report.

So, I was kicked out for speaking to an outside agency without Mr. Beguhn's permission about my PREA concerns. No other reason. I had previous to this been doing well by anyones assesment of my performance in PLUS. I was a #2 and #1, and approval had just been recieved to participate in the OJT. program in PLUS. <u>Scott v. Coughlin</u>, 344 F.3d 282, 287-88 (2nd Cir. 2003) ("...[P]laintiff's involvement in filing claims against prison officials and helping others do so was protected activity, as it was an excercise of his right to petition the government for redress of grievances under the First Amendment.") <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1485, 1490 (11th Cir. 1997) (holding allegation that Plaintiff was placed in segregation after complaining to NAACP Stated a claim.) <u>Trobaugh v. Hall</u> 176 F.3d 1087 (8th Cir. 1999) (directing award of compensatory damages to prisoner placed in isolation for filing grievances.) <u>Hines v. Gomez</u>, 108 F.3d 265 (9th Cir. 1997) (affirming jury verdict for Plaintiff subjected to retaliation for filing grievances.)

I will also be contacting the A.C.L.U. and let them, and the U.S. Department of Justice know what has happened, and how after contacting the Indiana PREA Executive Director my name has been disclosed to the Facility violating my right to confidentially report this, and that I have also been retaliated against for making this report. Violation of my 1st Amendment rights, and the retaliation associated with it in this case was not for any legitimate correctional purpose. My family is also aware of the situation. I am not accused of any conduct, violation of a rule and my behavior has not been an issue either. As a matter of fact I've recieved no written reason as to why I was removed from the program. Only what Mr Hudson told me and the fact I was moved out of the PLUS dorm to another Dorm. I am now in I3-223.

Thank you!

KJK #266745

Kurt J. Kemp

I3-223

*Placed in offender Mailbox in I-3 on 5/24/19 @ 8:45pm KQK*

**Indiana Department of Correction**
**New Castle Correctional Facility**
Offender Grievance Response Report
**Case Log #: 107472**

DOC No: 266745    **Offender Name:**   Kurt Kemp                    Bldg/Range/Bed: I-I3-223

**Current Facility:**   NCF

---

**TOPIC:**   Programs, Institution - Inmate Organizations                **Incident Date:**  20-MAY-19

**Response**

---

| LEVEL | Form Issue Date | Level Receive Date | Response Date |
|-------|-----------------|--------------------|---------------|
| I - Formal Grievance | 24-MAY-19 | 24-MAY-19 | |

**Level Response**
There is a chain of command that you are required to follow in this program.  You chose to skip the chain of command.  This has resulted in your termination from the program.
A. Beghun--Program Director

_____          _____
**Executive Assistant**                              **Date** 5/14/19

_____          _____
**Student/Offender**                                **Date** 5/24/19

_____   Agree   ☒   Disagree

24-MAY-19 10:26 AM



Indiana Department of Correction
New Castle Correctional Facility

Plaintiff's    Exhibit H

### RECEIPT - ADMINISTRATIVE REMEDY

**Date:** 24-MAY-19

**From:** Hannah Winningham
NCF

**To:** Kurt Kemp
NCF

**DOC#:** 266745
**Housing:** I-I3-223
**Current Facility:** NCF

**THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST IDENTIFIED BELOW:**

**Case ID:** 107472          **Level:** I - Formal Grievance

**Date Received:** 24-MAY-19

**Response Due:** 18-JUN-19

**Subject:** Programs, Institution-Inmate Organizations

At 19:15 on 6/3/19 I filed my disagreement to the response to the appeal I recieved today. I was denied the appeal.



**RECEIPT OF FACILITY LEVEL I APPEAL**
State Form 56285 (4-17)
INDIANA DEPARTMENT OF CORRECTION

| From: | Date *(month, day, year)* |
|---|---|
| Hannah Winningham | 5/30/19 |
| Name of offender | DOC number |
| Kurt Kemp | 266745 |
| Facility | Housing assignment |
| NCCF | I3-223 |

**THIS ACKNOWLEDGES THE RECEIPT OF YOUR FACILITY LEVEL I APPEAL REQUEST BELOW.**

| Log identification number | Date *(month, day, year)* | Response due *(month, day, year)* |
|---|---|---|
| 107472 | 5/30/19 | 6/7/19 |



**Indiana Department of Correction**
**New Castle Correctional Facility**

Plaintiffs Exhibit J

### RECEIPT - ADMINISTRATIVE REMEDY

---

**Date:** 07-JUN-19

**From:** Hannah Winningham
NCF

**To:** Kurt Kemp
NCF

**DOC#:** 266745

**Housing:** I-I3-223

**Current Facility:** NCF

**THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST IDENTIFIED BELOW:**

**Case ID:** 107472

**Level:** II - Formal Appeal

**Date Received:**

**Response Due:**

**Subject:** Programs, Institution-Inmate Organizations

# New Castle Correctional Facility
# P.L.U.S. Program Rules

1. P.L.U.S. program participants shall treat staff, volunteers, Aides, and other P.L.U.S. participants with respect (to include religious and/or spiritual beliefs) and shall respect the property of others.
2. PLUS participants shall not possess offensive printed material or pictures, such as sexually explicit material or those that are demeaning or derogatory toward others.
3. Participants shall not be late to any assigned meetings. During meetings and announcements your attention must be on the person speaking.
4. Participants shall ensure that their immediate living areas are clean, tidy, and help when requested to keep any common areas neat and clean. When leaving the dorm all items are to be put away (only exceptions are fire drills or being called by pod staff).
5. Participants must be fully dressed during business hours: 6:30 am through the 4:00pm Community meeting. Participants' clothes are to be pressed and their hygiene kept up.
6. The use of profanity or other derogatory language is prohibited. Any use of the 5 "dirty words" (**any form** of the "A", "D", "S", "B", or "F" words) will result in the participant being sanctioned. If a participant is unable to complete the sanction, they may make a list of 10 words they could have used instead. After the participants' probationary period, they will be subject to the following sanctions:
   - **1st Offense:** 1hr. extra duty, to be determined by leadership and to be supervised by an Aide.
   - **2nd Offense:** will result in 3hrs. extra duty, a written one page paper on why it's <u>not</u> ok to disobey the rules to be read in front of the pod at the 4 PM meeting.
   - **3rd Offense (Habitual):** will go before the Program Director and sanctions will be given. If you make it for 30 days without a violation, you will start over at the 1st offense.
7. Everyone will be awake at 6:30 am, will be out of their beds, fully dressed, and have their beds made by the time the morning meeting begins (approx. 7:00 am.).
8. Participants must be awake between the hours of 6:30 am to 4:00 pm Monday through Friday. During these times, you cannot cover up with a sheet or blanket or cover your eyes. The only exceptions are if you have a sleep pass or a designated suicide watch from the night before. When an Aide wakes a participant up, they must get up at that time. If a participant lies back down and goes to sleep he will lose the next free time available. If this becomes a problem on a continual basis, a write up and sanctions will result.
9. The downstairs dayroom is available from 5:00am through 12 midnight every day of the week. Dayroom noise level should be reduced to quiet conversation level from 5:00am-7:00am and 10:00pm to midnight. There is to be no noise in the bed area, including the upstairs table area, between 10:00pm and 6:00am. (Those going to suicide watch, employment, and snow crew during late night hours have 30 minutes to get a shower, prepare food, etc.) Television viewing from midnight to 5:00am must be done from the participant's bed.
10. Tier-to-tier communication is not permitted. Items are not permitted to be thrown or dropped from one tier to the other.
11. There will not be anything hanging on the walls or beds, no enclosures for beds, no cloth lines, and nothing will be hanging or placed on chairs. Wet laundry will only be allowed to hang on the rails or bed frames from 11pm – 5am except on dorm laundry days. Obstruction of windows and/or aisle ways will not be allowed.
12. Headphones are only to be listened to while on your ears. Loud radio or TV listening is prohibited.
13. No one is to be in the quiet room except those assigned and leadership when needed.
14. All participants are to be on their bunks during the designated counts and not in chairs or anything else next to their beds.
15. Issues between participants are to be dealt with at the lowest level possible to achieve a mutual understanding. If you are unable to resolve the issue the following conflict resolution steps are to be followed:
    - **STEP ONE:** Peer to Peer. Participants are to address each other when situations arise and attempt to work them out on their own. If an issue has been addressed and a solution cannot be reached, follow step two.
    - **STEP TWO:** Approach your Peer Mentor and AG Leader who can sit down and help mediate the issue. If a solution cannot be reached, follow step three.
    - **STEP THREE:** Approach the Aides to assist in achieving a resolution. The Aides can utilize several different methods from mediating, to conducting separate conversations in order to gather each viewpoint, direct intervention, etc... If a solution still cannot be reached, follow step four.
    - **STEP FOUR:** At this point, if a solution cannot be achieved, the Aides will determine if any outside assistance is needed to resolve the issue. From this point forward, the outside assistance will determine what steps are to be followed to resolve the issue.
16. All D.O.C. and G.E.O rules will be followed.
17. All interaction with staff will be conducted through the Aides and Clerks. When issues arise and staff is involved, the program leadership will be the only ones to deal with them. At no time are participants to run up to the door or staff to have issues addressed. Take all issues to your leadership and they will address them with staff.
18. Plastic chairs are to be neatly stacked <u>anytime</u> a participant leaves the pod. Plastic chairs cannot be saved for any reason.

Orientation (4)

# New Castle Correctional Facility
# P.L.U.S. Program Bed Area Rules

- Towels:
  - **Double bunks:** The Participant on the upper bunk will fold and hang his towel on the left at the foot of the bed. The Participant on the bottom bunk will fold and hang his towel on the left at the head of the bed. Both Participants will hang their towel at the same height as the back row towels.
  - **Single bunks:** folded and hung at the foot of the bed on the left side
  - If your towel is wet from an earlier shower, you may spread it out. However, if visitors come in, or if you leave the pod for any reason, then you need to fold it until after business hours.
- Khakis and/or other clothes are not to be hung on your bunk rails.
- Laundry bags:
  - **Double bunks:** hung on the right side corners. The Participant on the upper bunk will hang his at the foot of the bed and the Participant on the lower bunk will hang his at the head of the bunk.
  - **Single bunks:** hung at the head of the bed, on the right corner.
    - If you are assigned to a bunk that is against the wall, you may hang your bag on the left corner at the head of the bed.
  - **Head of Bunk:** Closest to the back wall.
  - **Foot of Bunk:** Closest to the dayroom.
- Coats are to be either folded nicely on your bed, or hung over your laundry bag.
- Shoes:
  - **Double bunk:** The Participant on the upper bunk will place his shoes at the front of the bunk area. The Participant on the lower bunk will place his shoes at the rear of the bunk area.
  - **Single bunk:** Participants on the back row will place their shoes at the front of the bunk. Participants on the front row will place their shoes at the rear of the bunk.
- Property boxes/drawers must be kept under your bunk when not in use, and there is not to be anything stored on top of them. Property boxes are not tables to be left out all day.
- The lowest back rail of your bunk can be used for sweaty clothes after recreation.
- There is to be no wet laundry hung out to dry.
- There are to be no arts and crafts projects displayed, hung, or attached to your bunk or wall.
- Your empty bunk space is not a desk for various containers and should be kept free of clutter.
- Tupperware totes, coffee mugs, soda bottles, and other various containers should be placed in property boxes when not in use.
- Food Sale products (cases of pop, pizza boxes, KFC™ buckets) are alright in your bed area as long as they are holding that specific food or beverage. Dispose of these containers as soon as they are empty.
- There are to be no makeshift trashcans, and absolutely no cardboard.
- All containers are to be filled with its original contents only.
- There is to be no plastic and/or tape attached to any part of the bunks.
- All bunks must have white collars and be made to impeccable standards.
  - A wool blanket will be your top cover unless it is medically documented that you cannot use a wool blanket.
  - White blankets are to be folded neatly and stored under your pillow when not in use.
- From 10:00pm to 6:00am there will be no noise, talking, or loitering in the bed area.

# New Castle Correctional Facility
# P.L.U.S. Program Gateway Rules

- No Food or Drink Allowed at any time.
- Do not move chairs once they are placed.
- Fill all chairs from front to back. Allow those who are coming in from suicide watch, early feed, passes, etc., to use the chairs in the back.
- When class is finished, stay in the classroom area until being dismissed either to the dorm or to chow.
- No sleeping during class.
- No working on anything other than what pertains to the class.
- No talking (side barring) at any time unless you are called on to talk.
- All closets and offices are off limits unless called for.
- You may use the restroom once during class. Keep it brief!
- Do not bother tutoring or sewing crews during class.
- If you are on a count letter, attend!
- Do not walk through the Sewing Crew!

Orientation (5)

# INDIANA DEPARTMENT OF CORRECTION
## Level 3 Grievance Appeal
### Department Offender Grievance Manager
### Time Frame Extension Notice

|  | OFFENDER: | DOC #: | Facility | Housing |
|---|---|---|---|---|
| **To:** | Kurt Kemp | 266745 | NCCF | 13-101 |

**From:** Mr. I. Randolph, Final Reviewing Authority, Offender Grievance Process #00-02-301

Todays Date: **June 17, 2019**

As outlined in the grievance policy (00-02-301) the Grievance Specialist or the Department Offender Grievance Manager may extend their respective response deadline once, to allow for the investigation of your complaint / grievance issues to be completed.

The Facility Grievance Specialist may extend the time frame once, for five (5) business days.

The Warden may extend the time frame once, for ten (10) business days.

The Department Offender Grievance Manager may extend the time frame once, for ten (10) business days.

Therefore, you are being notified at this time that your original time frame for receiving a respond to your grievance or appeal is due to expire prior to the investigation being completed and is being extended. You should receive a response by the date indicated below.

| | | | |
|---|---|---|---|
| _____ Grievance | (Five (5) Business Days) | Case # _____ |
| _____ Grievance Appeal (Warden) | (Ten (10) Business Days) | Case # _____ |
| **X** Grievance Appeal (Central Office) | (Ten (10) Business Days) | Case # 107472 |

**Your time frame has been extended and you should received your response by this date:**                                **July 1, 2019**

Plaintiffs Exhibit 22

# INDIANA DEPARTMENT OF CORRECTION
## Level 3 Grievance Appeal
### Department Offender Grievance Manager
### Time Frame Extension Notice

| | OFFENDER: | DOC #: | Facility | Housing |
|---|---|---|---|---|
| **To:** | Kurt Kemp | 266745 | NCCF | 13-126 |

**From:** Mr. I. Randolph, Final Reviewing Authority, Offender Grievance Process #00-02-301

Todays Date: _____**July 2, 2019**_____

As outlined in the grievance policy (00-02-301) the Grievance Specialist or the Department Offender Grievance Manager may extend their respective response deadline once, to allow for the investigation of your complaint / grievance issues to be completed.
The Facility Grievance Specialist may extend the time frame once, for five (5) business days.
The Warden may extend the time frame once, for ten (10) business days.
The Department Offender Grievance Manager may extend the time frame once, for ten (10) business days.

Therefore, you are being notified at this time that your original time frame for receiving a respond to your grievance or appeal is due to expire prior to the investigation being completed and is being extended.
You should receive a response by the date indicated below.

_____ Grievance          (Five (5) Business Days)          Case # _____

_____ Grievance Appeal (Warden)     (Ten (10) Business Days)     Case # _____

__X__ Grievance Appeal (Central Office)   (Ten (10) Business Days)   Case # ___107472___

**Your time frame has been extended and you should received your response by this date:**                                   **July 16, 2019**

Plntff's Exhibit M



# REPORT OF CLASSIFICATION HEARING

State Form 3412 (R6 / 8-12)

DEPARTMENT OF CORRECTION

| Name of offender *(last, first, middle initial)* | DOC Number | Facility |
|---|---|---|
| **Kemp, Kurt** | **266745** | **NCF** |

| Date *(month, day, year)* | Current classification designation | Credit class | Earliest projected release date *(month, day, year)* |
|---|---|---|---|
| **06/10/2019** | 2  I  F  A  B  C | B | **10/19/2023** |

| Housing assignment | Assignment area |
|---|---|
| **I3-101** | **PR-XPP-PLU-PROGPA02-D-I** |

| Work release | Projected activation date *(month, day, year)* | Type of classification hearing |
|---|---|---|
| F5 | NA | **Reclass** |

I submit this request for reclassification

Idle /INP

| Signature | Date signed *(month, day, year)* |
|---|---|
| KB | 6-10-19 |

Classification Committee: Recommendation and Basis   ☐ Approval   ☐ Denial

| Signature | Title | Date signed *(month, day, year)* |
|---|---|---|
| KB | RJ | 6-10-19 |

**The recommendation has been explained to me.**

| Signature of offender | Date signed *(month, day, year)* |
|---|---|
| KK | 6/11/19 |

Supervisor of Classification: Decision and Basis   ☒ Approval   ☐ Denial

Action taken *(Facility decisions are only a recommendation at facility level)*

ReClass
IDLE

| Signature of Supervisor of Classification | Date signed *(month, day, year)* |
|---|---|
| Q. Elsrod for FO | 6-17-19 |